UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCHEURER HOSPITAL,                          :

              Plaintiff,                      :          CASE NO. 1:12-cv-11536

                                :

            v.                              :          (Judge Thomas L. Ludington)
                                :          (Magistrate Judge Charles E. Binder)

LANCASTER POLLARD & CO., *et al.,*          :

              Defendants.                     :

## MOTION OF DEFENDANTS LANCASTER POLLARD & CO. AND TANYA K. HAHN TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS

Defendants Lancaster Pollard & Co. (hereinafter "LP") and Tanya K. Hahn move this Court pursuant to Rule 37(a)(3)(B)(iv) for an order compelling Plaintiff Scheurer Hospital (hereinafter "Scheurer") to produce all of the following:

1.     All documents Scheurer or any of its past or present directors, officers, employees, attorneys, representatives, or agents (hereinafter collectively "Scheurer") received from Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., or any of their past and present directors, officers, employees, attorneys, representatives, or agents (hereinafter collectively "Lehman") during the period September 15, 2008, to and including April 13, 2012.

2.     All documents Scheurer sent, mailed, and/or delivered to Lehman during the period September 15, 2008, to and including April 13, 2012.

3.     All notes, memoranda, and all other documents which, directly or indirectly, relate to, refer to, and/or comment upon any and all telephone conversations between Scheurer and Lehman during the period September 15, 2008, to and including April 13, 2012.

4.      All notes, memoranda, and all other documents which, directly or indirectly, relate to, refer to, and/or comment upon any and all meetings, conferences, and/or mediations between Scheurer and Lehman during the period September 15, 2008, to and including April 13, 2012.

5.      All contracts, agreements, and understandings between Scheurer and Lehman, of whatever kind or nature, entered into during the period September 15, 2008, to and including April 13, 2012.

6.      All documents which, directly or indirectly, relate to, refer to, and/or comment upon the *"Termination Agreement settling all claims of Lehman"* alleged in Paragraph 39 of the Complaint filed in this action including, but not limited to, all settlement agreements, all drafts of or proposed settlement agreements, all cancelled checks and/or wire transfer instructions, all releases and covenants not to sue, and all drafts of or proposed releases and covenants not to sue.

7.      All notes, memoranda, and all other documents prepared, in whole or in part, by any member of Scheurer's Board of Directors or any officer, employee, or attorney for Scheurer during the period September 15, 2008, to and including April 13, 2012, pertaining, directly or indirectly, to any settlement or proposed settlement with Lehman of the Lehman Claims referred to in Paragraph 39 of the Complaint filed in this action.

8.      All documents which, directly or indirectly, contain any assessments and/or evaluations of the merits of the Lehman Claims referred to in Paragraph 39 of the Complaint filed in this action.

9.      All documents which, directly or indirectly, contain any recommendations or advice to Scheurer to settle the Lehman Claims referred to in Paragraph 39 of the Complaint filed in this action.

10.     All documents used, referred to, and/or relied upon by Scheurer's Board of Directors,  or any member thereof, to approve or vote for the *"Termination Agreement settling all claims of Lehman"* as alleged in Paragraph 39 of the Complaint filed in this action.

11.     All meeting minutes of Scheurer's Board of Directors, or of any committee thereof, during the period September 15, 2008, to and including April 13, 2012, which mention, refer to, and/or relate to Lehman, the Lehman Claims referred to in Paragraph 39 of the Complaint filed in this action, or a settlement of the aforementioned Lehman Claims.

12.     All handwritten notes, memoranda, and all other documents created during the period September 15, 2008, to and including April 13, 2012, which mention, relate to, and/or refer to Lehman, the Lehman Claims referred to in Paragraph 39 of the Complaint filed in this action, or the *"Termination Agreement settling all claims of Lehman"* as alleged in Paragraph 39 of the Complaint filed in this action.

13.     All documents which, directly or indirectly, explain why Scheurer paid Lehman the *"payment"* alleged in Paragraph 39 of the Complaint filed in this action.

14.     All documents Scheurer produced to Lehman since September 15, 2008, pursuant to one or more subpoenas or requests for documents or information.

15.     All documents which, directly or indirectly, contain, set forth, relate to, refer to, or comment upon any and all opinions or conclusions that Scheurer was at any time liable to Lehman for the Lehman Claims referred to in Paragraph 39 of the Complaint filed in this action.

16.     All documents prepared during the period September 15, 2008, to and including April 13, 2012, which mention, relate to, refer to, and/or comment upon Lehman, the Lehman Claims referred to in Paragraph 39 of the Complaint filed in this action, LP, and/or Defendant Peck, Shaffer & Williams LLP.

17.     All documents which, directly or indirectly, relate to, refer to, and/or comment upon any and all discussions, negotiations, and/or mediations between Scheurer and Lehman with respect to the settlement or compromise of the Lehman Claims referred to in Paragraph 39 of the Complaint filed in this action.

18.     All meeting minutes of Scheurer's Board of Directors, or any committee thereof, prepared during the period September 15, 2008, to and including April 13, 2012, which mention, relate to, and/or comment upon LP.

19.     All notes, memoranda, and all other documents prepared by any officer, employee, or attorney for Scheurer, or by Scheurer's Board of Directors, or any member thereof, during the period September 15, 2008, to and including April 13, 2012, relating to, referring to, and/or commenting upon LP.

20.     All documents Scheurer received from Defendant Peck, Shaffer & Williams LLP during the period September 15, 2008, to April 13, 2012.

21.     All documents which Scheurer sent, mailed, and/or delivered to Defendant Peck, Shaffer & Williams LLP during the period September 15, 2008, to and including April 13, 2012.

22.     All notes, memoranda, and all other documents which, directly or indirectly, relate to, refer to, and/or comment upon any telephone conversations between Scheurer and Defendant Peck, Shaffer & Williams LLP during the period September 15, 2008, to and including April 13, 2012.

23.     All notes, memoranda, and all other documents which, directly or indirectly, relate to, refer to, and/or comment upon any and all meetings and/or conferences between Scheurer and Defendant Peck, Shaffer & Williams LLP during the period September 15, 2008, to and including April 13, 2012.

24.     Document Nos. SH719-720, 723-725, 727-728, 770-771, 774-775, 777-797, and

801-814 listed on the Privilege Log served by Scheurer on July 2, 2012.

The grounds for the foregoing motion are that LP and Ms. Hahn properly requested that

Scheurer produce all of the foregoing documents, that all of them are relevant and otherwise subject

to discovery, and that Scheurer has refused to produce them or permit their inspection and copying.

This motion is based upon the Affidavit of Lawrence D. Walker and the Brief in Support

thereof, both of which are being filed simultaneously herewith, and the following certification.

## CERTIFICATION

Pursuant to and in accordance with Rule 37(a)(1) of the Federal Rules of Civil Procedure

and Local Rule 37.1, and as set forth in the Affidavit of Lawrence D. Walker filed simultaneously

herewith, the undersigned do hereby certify that they have in good faith conferred with counsel for

Scheurer in an effort to obtain the discovery requested herein without Court action.  Nonetheless,

the parties have reached an impasse, and LP and Ms. Hahn must seek the assistance of the Court to

obtain the discovery they need and to which they are entitled.

Respectfully submitted,

*/s/ Jonathan C. Martin*
Jonathan C. Martin (P37926)
Smith Martin Powers & Knier PC
900 Washington Avenue
P.O. Box 219
Bay City, MI 48707-5704
Telephone:     (989) 892-3924
Facsimile:     (989) 892-3926
Email:  jmartin@smpklaw.com

*/s/ Alfred J. Weisbrod*
Alfred J. Weisbrod
111 West Fourth Street, Suite 1100
Dayton, OH   45402-0513
Telephone:     (937) 443-9999
Facsimile:     (937) 443-9890
Email:  alweisbrod@aol.com

*/s/ Lawrence D. Walker*
Lawrence D. Walker
Taft Stettinius & Hollister LLP
65 East State Street, Suite 1000
Columbus, Ohio  43215-4216
Telephone:     (614) 221-2838
Facsimile:     (614) 221-2007
Email:  walker@taftlaw.com

*Attorneys for Defendants Lancaster Pollard & Co. and Tanya K. Hahn*

## CERTIFICATE OF SERVICE

I hereby certify that, on this, the 6th day of September, 2012, I electronically filed the foregoing \

*Motion Of Defendants Lancaster Pollard & Co. And Tanya K. Hahn To Compel Plaintiff To*

*Produce Documents* with the Clerk of the Court using the ECF system, which, in turn, will serve all counsel

of record.

/s/ *Jonathan C. Martin*
Jonathan C. Martin

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCHEURER HOSPITAL,                          :

                    Plaintiff,              :          CASE NO. 1:12-cv-11536

                                            :

                                            :

          v.                                :          (Judge Thomas L. Ludington)
                                            :          (Magistrate Judge Charles E. Binder)
LANCASTER POLLARD & CO., *et al.*,          :

                                            :

                    Defendants.             :


# BRIEF OF DEFENDANTS LANCASTER POLLARD & CO. AND TANYA K. HAHN IN SUPPORT OF THEIR MOTION TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS

## I.     STATEMENT OF THE CASE

### A.     Scheurer's Claims

In this case, Plaintiff Scheurer Hospital (hereinafter "Scheurer") seeks to recover from Defendants Lancaster Pollard & Co. and Tanya K. Hahn (hereinafter collectively "LP") an unspecified sum of money Scheurer claims it paid Lehman Brothers Special Financing Inc. (hereinafter "Lehman") in settlement of a disputed claim.   Scheurer alleges that LP told it to send the notice terminating its swap agreement to Lehman by fax; that fax termination was improper; and that Scheurer then settled Lehman's wrongful termination claim because LP's advice was allegedly wrong.[1]   *See* Compl., ¶¶ 46-49, 62, 64, 65, 71-74.

---

[1]   Despite this Court's Order to make initial disclosures by August 8, 2012, *see* Doc. 17, Scheurer refuses to provide the amount of its settlement or a computation of each category of its damages or the documents supporting those

Scheurer does not claim that the language, form, or content of the termination notice LP provided was in any respect insufficient or inadequate. Rather, Scheurer asserts that it settled with Lehman because it sent a single piece of paper by fax rather than by Federal Express. This is 21st Century America, not 16th Century England, and, in legal matters, substance prevails over form. As a consequence, in *Good Samaritan Home, Inc. v. Lancaster Pollard & Co.,* 2012 WL 952825 (S.D. Ind. 2012), a case identical to this matter, the court held that the *"termination* [of a Lehman swap agreement] *by facsimile is effective transmission if the fax served as actual notice to the receiving party of the termination, even where the form violates the contract."* *Id.* at *4.

Scheurer faxed its termination notice to the number Lehman provided in the swap agreement. Scheurer's fax machine confirmed that the notice was received at the number Lehman provided. Immediately after Scheurer faxed the termination notice to Lehman, the latter ceased generating the monthly billing statements it had sent to Scheurer since the inception of the swap agreement years earlier.

As alleged in its Complaint, Scheurer must prove that LP's alleged wrongdoing caused its settlement with and payment to Lehman. But, Lancaster and Ms. Hahn never encouraged or urged Scheurer to settle. They always maintained that Scheurer's swap termination was proper. Under the circumstances, neither Lancaster nor Tanya Hahn nor their alleged wrongdoing was the direct or immediate cause of Scheurer's decision to settle with Lehman. Who or what directly or immediately caused Scheurer to settle needs to be discovered because, as set forth above, it was not liable to Lehman for anything.[2]

---

computations as required by Fed. R. Civ. Pro. 26(a)(1)(A)(iii). This failure is the subject of a separate motion to compel filed by LP on September 4, 2012. *See* Doc. 24.

[2] Scheurer had numerous defenses to Lehman's claims. For instance, the swap agreement was an executory contract for the purposes of 11 U.S.C. § 365. As a consequence, it was unenforceable until such time as the Bankruptcy Court approved its assumption. *NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 531 (1984); *In Re Tidewater Memorial Hospital,* 106 B.R. 876, 884 (Bkrtcy. E.D. Va. 1989). The Bankruptcy Court never approved

**B.**     **LP's Attempts To Obtain Documents From Scheurer**

On April 13, 2012, LP served Scheurer with a Request for Production of

Documents. *See* Walker Aff., ¶ 2, Exh. A.  Therein, LP requested that Scheurer produce:

- All documents constituting or describing communications between Lehman and Scheurer
- All documents related to its settlement with Lehman, including the settlement agreement itself and all drafts thereof
- All documents containing assessments or evaluations of Lehman's claims
- All documents relied upon by Scheurer's Board of Directors and its officers in deciding to settle with Lehman
- All internal documents pertaining to the Lehman settlement
- All internal documents which mention LP
- All documents constituting or describing communications between Scheurer and Defendant Peck, Shaffer & Williams LLP (Walker Aff., Exh. A, ¶¶ 1-13, 18-24, and 27-29)

Except for the last category, Scheurer, on July 2, 2012, objected to the production of all

of the foregoing documents based upon:  (a) the Alternative Dispute Resolution Procedures

Order For Affirmative Claims of Debtors Under Derivative Contracts entered on September 29,

2009, by the Bankruptcy Court for the Southern District of New York in the *Lehman* bankruptcy

case (hereinafter "the ADR Order"), a copy of which is attached hereto as Exhibit 1; (b)

Evidence Rule 408; and (c) the attorney-client privilege and the work product doctrine. *See*

Walker Aff., Exhs. B and H. at ¶¶ 1-13, 18-19, 24, and 27-29.   It objected to the production of

its communications with Defendant Peck, Shaffer & Williams LLP -- -- who it is suing for legal

malpractice -- -- based upon the attorney-client privilege and work product doctrine. *See* Walker

Aff., Exhs. B and H at ¶¶ 20-23.

---

Lehman's assumption of the swap agreement, and Lehman never assumed it.  Scheurer settled a claim based upon
an unenforceable contract.

Citing numerous authorities and making several legal arguments, LP's counsel, on July 12, 2012, wrote to Scheurer's lawyers and explained how Scheurer's objections were without merit and should be withdrawn. *See* Walker Aff., ¶ 5, Exh. D. Thereafter, counsel for the parties conferred and corresponded until August 27, 2012, to resolve Scheurer's objections. *See* Walker Aff., ¶¶ 6-13, Exhs. E-I.

All of that effort was for naught. Scheurer has remained adamant. It will not produce any documents regarding the contours, particulars, and specifics of Lehman's claims or its defenses to them, its negotiations with Lehman, its settlement with Lehman, or the reasons for or bases of its decision to settle. On the major issues in this case, LP is nearly defenseless for lack of any discovery. Scheurer will not even produce any documents pertaining to LP and Peck Shaffer -- -- the defendants in this action.

As the following demonstrates, Scheurer's objections are utterly without merit. An order compelling it to produce the requested documents is required.

## II.   **ARGUMENT**

### A.   **The Lehman Documents Are Subject To Discovery In This Case And This Court Must Order Scheurer To Produce Them**

Scheurer has refused to produce any documents pertaining to Lehman, Lehman's claims, its negotiations with Lehman, its settlement with Lehman, or why it settled with Lehman. *See* Walker Aff., Exh. B at ¶¶ 1-13, 24, and 27-29; Exh. E; Exh. H at ¶¶ 1-13, 24, and 27-29. One basis for its refusal is Paragraph 13 of the ADR Order which, in pertinent part, provides:

> <u>No statements or arguments made or positions taken by the</u> mediator, <u>the applicable Debtors, Derivatives Counterparties,</u> Indenture Trustee or the Creditors Committee during any part of the alternative dispute resolutions process, including Settlement Conferences and the Mediation Stage <u>may be disclosed by</u> the Mediator <u>or any such parties or their attorneys and advisors to the court or any third party</u> . . . (emphasis added)

By its terms, the ADR Order prohibits Scheurer from producing many of the documents LP has requested.  But, that circumstance does not prevent this Court from ordering Scheurer to produce them.[3]

It is axiomatic that Lancaster Pollard and Tanya Hahn, as Defendants in this action, are entitled to the production of all non-privileged relevant documents in Scheurer's possession.  Civil Rule 26(b)(1) could not be more clear:

> Unless otherwise limited by court order, the scope of discovery is as follows: <u>Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense</u>   .   .   .   (emphasis added)

Civil Rule 26(b)(2)(C) lists those specific circumstances where discovery may be *"otherwise limited by court order."*  Nothing in that Rule applies to the issue at hand.  Scheurer did not object on the basis of any of the grounds set forth in Civil Rule 26(b)(2)(C).  *See* Walker Aff., Exhs. B, E, and H.

As a consequence, under Civil Rules 26(b)(1) and 34, LP is absolutely entitled to the Lehman documents without any qualifications or conditions.  They are relevant and non-privileged, and, therefore, clearly discoverable.

Nothing in the ADR Order trumps Civil Rules 26 and 34, and nothing in those Rules provides that their requirements are subservient to an order entered in a proceeding where one of the parties was not even a participant.  LP has been unable to find any authority for the proposition that a confidentiality order entered in one case can provide a legitimate basis for objection to discovery in another, and Scheurer has certainly cited none.  <u>If the documents are</u>

---

[3]   Scheurer has also cited the Standing Order of the Bankruptcy Court for the Southern District of New York related to Procedures governing Mediation of Matters in Bankruptcy Cases as another reason for not providing any meaningful discovery.  *See* Walker Aff., Exh. B at ¶¶ 1-13, 24, and 27-29; Exh. H at ¶¶ 1-13, 24, and 27-29.  The Standing Order is not as broad as the ADR Order, and LP's argument with respect to the ADR Order applies with equal force to the Standing Order.

<u>relevant and non-privileged, they must be produced</u>.  That is what Civil Rules 26(b)(1) and 34 expressly provide.

In light of the foregoing, Scheurer has not really objected to its production of the Lehman documents.  Indeed, in its counsels' correspondence, Scheurer offered to produce them if a protective order agreeable to Lehman is entered.  *See* Walker Aff., Exh. E at pp. 3-4.

What Scheurer is actually saying is that the ADR Order prevents it from performing its mandatory discovery obligations under Civil Rules 26(b)(1) and 34.  But, it is well-settled that a party cannot rely upon a court order to excuse the performance of its otherwise lawful obligations if it has not attempted to obtain relief from that order.

In *MG Refining & Marketing, Inc. v. Knight Enterprises, Inc.*, 25 F. Supp. 2d 175 (S.D.N.Y. 1998), an analogous case, the court held:

> [A]lthough governmental orders barring an action are normally grounds for an impossibility defense, impossibilities caused by such orders "will excuse a party's performance only if the fault of the party owing performance did not contribute to the order. [citation omitted]"  <u>This fault standard has been taken to entail that parties who fail to challenge vigorously a governmental action, or who still have some chance of controlling its outcome, will be unable to cite the resulting order as grounds for a successful impossibility defense.</u>  [Citations omitted]  (*Id.* at p. 188; emphasis added)

The undisputed fact is that Scheurer, while harboring and preparing a claim against LP, purposefully and willfully settled within the strictures of the ADR Order when it had no obligation to do so.   It is now using that very Order as an excuse for not producing immensely relevant non-privileged documents.   The law will not permit it to do so.

In *First Nat. Bank of Chicago v. Atlantic Tele-Network Co.*, 946 F. 2d 516, 521 (7th Cir. 1991), the Seventh Circuit held:

> Furthermore, a defense of impossibility must fail when the party invoking it has not made reasonable efforts to prevent occurrence of the event that has made performance impossible. [Citation

omitted]  .  .  .  [Defendant] cannot make performance impossible and then cry impossibility.  (Emphasis added)

Likewise, in *Lowenschuss v. Kane,* 520 F. 2d 255, 265 (2nd Cir. 1975), the court stated:

> Impossibility caused by a judicial order prohibiting performance will excuse a party's performance only if the fault of the party owing performance did not contribute to the order.

*See also Bank of Canton, Ltd. v. Republic Nat. Bank of New York,* 509 F. Supp. 1310, 1319-1320 (S.D.N.Y. 1980), *aff'd,* 636 F. 2d 30 (2d Cir. 1980) (injunction entered with defendant's consent in prior litigation where the plaintiff was not a party cannot excuse performance); *RSB Mfg. Corp. v. Bank of Baroda,* 15 B.R. 650, 654 (S.D.N.Y. 1981) ("The defense of impossibility extends to prohibition by judicial action as long as the party seeking to be excused has not caused or failed to prevent the judicial action.").

As stated above, Scheurer had no obligation to participate in the Bankruptcy Court's ADR process and, thereby, subject itself to the ADR Order.  Lehman's purported claim against Scheurer was a garden variety breach of contract claim governed by New York law.   On June 23, 2011 -- -- several months before the Lehman settlement -- -- the Supreme Court decided *Stern v. Marshall,* 131 S. Ct. 2594 (2011), and expressly held that Bankruptcy Courts have no jurisdiction over a bankrupt's state law claim against a non-party to the bankruptcy.  *See also Kirschner v. Agoglia,* 2012 WL 1622496 (S.D.N.Y. 2012) (Bankruptcy Court for the Southern District of New York had no jurisdiction to adjudicate fraudulent transfer claim arising under state law).  In spite of that clear and definitive holding, Scheurer voluntarily participated in the ADR process, thereby consenting to its confidentiality restrictions.

Moreover, Scheurer had no obligation to settle within the framework of the ADR Order.  In pertinent part, Paragraph 5.a.(ii) thereof provides:  *"[N]o party is required to settle or compromise any dispute or enter into a particular settlement or compromise."*  And, in *In Re A.*

*T. Reynolds & Sons, Inc.,* 452 B.R. 374, 382 (S.D.N.Y. 2011), the District Court reviewed the standing mediation order of the Bankruptcy Court for the Southern District of New York, which is virtually identical to the ADR Order, and reversed the Bankruptcy Court's sanctions against a party for not mediating in "good faith." The court expressly held that a party has an absolute right to assert a "no pay position" in bankruptcy court mediation and stated:

> Thus, contrary to the Bankruptcy Court's determination, Wells Fargo was within its rights to enter the mediation with the position that it would not make a settlement offer. It was also within its rights to "predetermine that it was not liable" and to "insist on being dissuaded of the supremacy of its legal position." *A. T. Reynolds,* 424 B.R. at 92. A contrary holding would be directly at odds with a party's right to adopt a "no pay" position in settlement negotiations.

If the ADR Order applies to the documents at issue, and Scheurer says that it does, then it knowingly and voluntarily put them within its scope. <u>It must now remove them if it wishes to pursue this action</u>. To remove the Lehman documents from the prohibitions of the ADR Order, Scheurer must petition the Bankruptcy Court. <u>This Court has no jurisdiction to grant that relief</u>. Only the Bankruptcy Court can do so.

On the other hand, the ADR Order does not prevent this Court from issuing an order compelling Scheurer to produce the Lehman documents. All of the conditions exist for the issuance of such an order pursuant to Civil Rule 37(a)(3)(B)(iv) -- -- a request for the production of the documents was properly made, the documents are undisputedly relevant and non-privileged, and Scheurer has failed "to permit inspection." <u>Under the Civil Rules, LP is absolutely entitled to this relief</u>.

If such an order is issued, Scheurer must then move the Bankruptcy Court for relief from the ADR Order, and, in support thereof, present this Court's order compelling discovery. Under the law, Scheurer cannot rely upon the ADR Order to excuse its non-compliance with an order compelling discovery unless it diligently seeks relief from the Bankruptcy Court.

Scheurer has suggested that the parties agree to the entry of a protective order in this action. *See* Walker Aff., Exh. E at pp. 3-4. But, any such order would not, and could not, modify or limit the Bankruptcy Court's ADR Order. <u>The prohibitions of that order would remain even if a protective order is issued by this Court</u>. Scheurer's proposal would accomplish nothing. The ADR Order is <u>not</u> Lehman's order, or a creditor committee's order, or a creditor's order. <u>It is the Bankruptcy Court's Order</u>. And it is offensive and repulsive in the extreme for Scheurer to even suggest that the parties collaborate on an "end run" around the lawful process of another judicial authority. Scheurer is asking that LP and Ms. Hahn assist it in violating an order of the Bankruptcy Court. They will do no such thing. *See* Walker Aff., Exh. F.

The facts are: LP served a proper document request which sought the production of undisputedly relevant non-privileged documents which Scheurer will not produce. Pursuant to the provisions of Civil Rule 37(a)(3)(B)(iv), LP is absolutely entitled to an order compelling Scheurer to produce them notwithstanding the provisions of the ADR Order.[4]

**B.     <u>There Is No Settlement Privilege In Michigan</u>**

Scheurer also objected to the production of the Lehman and other documents on the basis of Evidence Rule 408, which prohibits the admission of settlement matters into evidence. *See* Walker Aff., Exhs. B and H at ¶¶ 1-13, 18, 19, 24, and 27-29. After LP's counsel told Scheurer's lawyers that Rule 408 was a rule of evidence -- -- and not a rule of discovery -- -- and that it does not provide a basis for a legitimate objection to discovery, *see* Walker Aff., Exh. D at

---

[4] Oddly, Scheurer also claims that its Termination Agreement with Lehman also prevents it from providing any discovery. LP is at a distinct disadvantage in responding to this argument. <u>Lancaster and Ms. Hahn have never seen that Agreement. Scheurer claims that it is a secret.</u> Consequently, LP has no way of knowing whether the documents in issue are or are not covered by Scheurer's secret Termination Agreement with Lehman. In any event, a plaintiff's private agreement with a third party to hide material evidence can hardly prevail over its discovery obligations in Federal civil litigation. The courts have routinely disregarded the very objection Scheurer has made and held that contractual confidentiality provisions have no impact upon a party's discovery obligations. *See Bennett v. LaPere*, 112 F.R.D. 136 (D.R.I. 1986); *Channel Bio Corp. v. Lewis*, 2009 WL 1769050 (S.D. Ill. 2009); *Magna Leasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559 (S.D.N.Y. 1977)

pp. 7-8, *Tarnowski v. Old Republic Ins. Co.*, 2007 WL 1599699 *2 (E.D. Mich. 2007), *Burket v. Hyman Lippit, P.C.*, 2007 WL 2421514 (E.D. Mich. 2007), the latter than claimed that Scheurer's objection was really grounded in the so-called "settlement privilege." *See* Walker Aff., Exh. E at p. 4.

No Michigan court has ever recognized a "settlement privilege." The Ohio Supreme Court has squarely held that there is no such thing under Ohio law. *See Ohio Consumers' Counsel v. Pub. Util. Comm.*, 111 Ohio St. 3d 300, 322, 856 N.E. 2d 213, 235 (2006).

Since Michigan does not recognize a "settlement privilege," none can be applied here.

Evidence Rule 501 provides:

> The common law -- -- as interpreted by United States courts in light of reason and experience -- -- governs a claim of privilege unless any of the following provides otherwise:

> - The United States Constitution;
> - A federal statute; or
> - Rules prescribed by the Supreme Court.

> But, in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rules of decision. (Emphasis added)

In pertinent part, the Advisory Committee Notes to Evidence Rule 501 provide:

> Basically [FRE 501] provides that in criminal and Federal question civil cases, federally evolved rules on privilege should apply since it is Federal policy which is being enforced. . . . Conversely, in diversity cases where the litigation in question turns on a substantive question of State law, and is brought in the Federal courts because the parties reside in different states, the committee believes it is clear that State rules of privilege should apply unless the proof is directed at a claim or defense for which Federal law supplies the rule of decision (a situation which would not commonly arise.) . . . It is intended that the State rules of privilege should apply equally in original diversity actions and diversity actions removed under 28 U.S.C. § 1441(b). (Emphasis added)

In light of the foregoing, Scheurer's reliance upon *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F. 3d 976 (6th Cir. 2003), and *Scotts Company LLC v. Liberty Mutual*

*Ins. Co.,* 2007 WL 1723506 (S.D. Ohio 2007), is entirely misplaced. *See* Walker Aff., Exh. E at p. 4. Neither of those cases was based upon Michigan law. Indeed, the Sixth Circuit expressly stated that its decision in *Goodyear* was premised upon the provision in Evidence Rule 501 which *"authorizes the federal courts to determine new privilege by examining 'common law principles . . . in light of reason and experience.'" See* 332 F. 3d at p. 979. As explained above, that principle does <u>not</u> apply to diversity cases.

Neither Evidence Rule 408 nor the settlement privilege provides Scheurer with a legitimate objection to the production of any of the documents described in Paragraphs 1-13, 18, 19, 24, and 27-29 of LP's and Ms. Hahn's document request. Scheurer should be ordered to produce them.

### C.    Scheurer Waived All Privileged Communications And Attorney Work <u>Product Related To Its Settlement With Lehman And The Causes Thereof</u>

Scheurer claims that it decided to settle with Lehman because of LP's alleged wrongdoing. <u>Lancaster and Ms. Hahn have a right to challenge that bald assertion</u>. In that connection, on April 13, 2012, they served Scheurer with a request that it produce all documents which would describe or explain (a) Lehman's claims and Scheurer's defenses to them, (b) the negotiations between the parties, (c) the reasons Scheurer decided to settle with Lehman, and (d) the settlement itself. *See* Walker Aff., ¶ 2 and Exh. A at ¶¶ 1-13, 24, and 27-29.

<u>Scheurer did not produce a single document responsive to any of the foregoing Requests</u>. Instead, it handed LP two Privilege Logs listing literally hundreds of documents which, though relevant and responsive, Scheurer refused to produce claiming privilege or attorney work product. *See* Walker Aff., ¶¶ 4 and 13, Exhs. C and I.[5]   But, by placing the causes of its

---

[5]   LP assumes that there are many more documents which Scheurer did not disclose in its Privilege Logs and did not produce. Contrary to the promises its counsel made on July 20, 2012, Scheurer has never called for the files of the lawyers who handled the Lehman settlement for it. *See* Walker Aff., ¶¶ 6, 7, and 13. As discussed, *infra* at p.

settlement with and payment to Lehman at the forefront of this litigation and then claiming that its attorneys were the primary, if not sole, architects of both, Scheurer impliedly waived any privilege or work product protection attaching to those documents.

In *Dow Chemical Co. v. Reinhard,* 2008 WL 2245007 *4-5 (E.D. Mich. 2008) (Ludington, J.), this Court held that *Howe v. Detroit Free Press, Inc.,* 440 Mich. 203, 487 N.W. 2d 374 (1992), set forth the standard for implied waiver of the attorney-client privilege under Michigan law. Therein, the Michigan Supreme Court adopted the following test:

> In a civil damages action, however, fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. <u>That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.</u> (440 Mich. At 221-222; 487 N.W. 2d at 382; emphasis added)

Such is the case here. Why Scheurer settled with Lehman upon the terms that it did is the central question in this case. According to Scheurer's Privilege Logs, the answer is "enmeshed" in privileged communications and work product. They must be produced.

A case dramatically in point is *Remus v. Sheahan,* 2006 WL 1460006 (N.D. Ill. 2006), where the plaintiff alleged that the defendant's wrongful conduct caused it to settle with and not assert a counterclaim against Pettiford. The defendant served interrogatories asking for information identical to that LP requested. The plaintiff objected arguing that the interrogatories sought information falling within the attorney-client privilege and work product doctrines and asserted that he had no intention of using privileged communications or protected information to prove his case.

---

17, Scheurer is required to produce all documents within its possession, custody, or control. That includes its settlement lawyers' files.

In ordering the plaintiff to answer the defendant's interrogatories, the court stated that the plaintiff had impliedly waived the attorney client privilege and work product protection by claiming that the defendant had caused his settlement with Pettiford and held:

> <u>Another element that must be proved, however, is a causal relationship between the [defendant's alleged] improper destruction of evidence and the plaintiff being forced to settle the Pettiford litigation.</u>   [Citations omitted].   In order to prove that causal relationship, litigation strategy decisions made during the Pettiford litigation will have to be examined in order to determine the effect that the destroyed evidence had on the litigation and [plaintiff's] decision to settle both the claims against him and any counterclaims he had against Pettiford.

*   *   *   *   *

> Like a malpractice claim, an access to court claim generally puts at issue the prior litigation.   In [plaintiff's] situation, whether any evidence that may be proven to have been destroyed actually effected the outcome of the Pettiford litigation is likely to be a contested issue.   <u>By bringing his access to court claim, [plaintiff] has affirmatively put at issue the underlying litigation, including attorney-client communications and work product that occurred during that litigation.</u>   (*Id.* at *3; emphasis added)

Likewise, in *Abbott Laboratories v. Alpha Therapeutic Corporation,* 200 F.R.D. 401 (N.D. Ill. 2001), Alpha counterclaimed against Abbott seeking to be indemnified for what it had paid in settlements with third parties arising out of product claims.   Abbott requested that Alpha produce all documents relating to its *"legal analysis of its actual or potential liability"* to the third parties. *Id.* at p. 404.   Relying upon the work product doctrine, Alpha objected, and the District Could ordered the subject documents produced holding:

> Secondly, Alpha has waived attorney work product protection with respect to the document categories listed in Abbott's request by placing the subject matter of the documents at issue in this subsequent indemnification suit.   .   .   .   As the holder of the privilege, and not the discovery proponent, Alpha injected the issue that brought about the waiver of privilege. *See, Lorenz,* 815 F. 2d at 1098.   <u>This is also a matter of common sense as it would be entirely unfair for a case to turn on an issue upon which one party has no knowledge and is barred from access to the necessary information while the other party is able to use the information to establish its claim while shielding it from disclosure.</u>

*   *   *   *   *

In *Lorenz*, the Seventh Circuit held that implicit waiver of privilege occurs *"when a holder relies on a legal claim or a defense, the truthful resolution of which will require examining confidential communications."* 815 F. 2d at 1098. <u>That is exactly what is required in this case.</u>

\*    \*    \*    \*    \*

<u>In short, issues surrounding the conduct of the underlying litigation are central to the question of whether Abbott should be forced pursuant to its contract obligations to indemnify Alpha.</u> The documents relating to the conduct of the hemophiliac litigation produced by Alpha's attorneys are not only vital to Abbott's defense, they are indeed the only means by which Abbott can evaluate the validity of Alpha's claim for indemnification. . . . Moreover, given that Abbott has claimed that the hemophiliac claims arose out of Alpha's negligence, and Alpha has conversely claimed that the liability it incurred stems from the assets acquired from Abbott, it is abundantly clear that the conduct of the defense, including documentation of the theories on which Alpha's attorneys rely, in the underlying lawsuits, is *"at-issue."* <u>Alpha cannot assert a claim for indemnification of costs of defending a lawsuit without providing its indemnitor with documentation which proves the legitimacy of those indemnification claims.</u> (*Id.* at pp. 410-411; emphasis added)

When a plaintiff places an alleged cause and effect in issue, it impliedly waives the attorney-client privilege and work product protection with respect to any communications and work product which are part of that alleged cause and effect. *See, e.g., Walters Wholesale Electric Co. v. National Union Fire Insurance Company of Pittsburgh, PA,* 247 F.R.D. 593 (C.D. Cal. 2008) (plaintiff's assertion that it was "forced" to contribute to a settlement implicitly waived the attorney client privilege with respect to attorneys' communications related to the settlement); *Minebea Co., Ltd. v. Papst,* 355 F. Supp. 2d 518 (D.D.C. 2005) (where plaintiff claimed that it justifiably relied to its detriment on the alleged misrepresentations of the defendant regarding certain patents, it impliedly waived the attorney client privilege with respect to communications with its lawyers with respect to those patents); *Potomac Electric Power Co. v. California Union Ins. Co.,* 136 F.R.D. 1 (D.D.C. 1990) (by seeking indemnification for environmental cleanup and defense costs, plaintiff placed its own conduct in issue thereby

waiving the attorney client privilege and work product protection with respect to the underlying proceedings).

Just as in all of the foregoing authorities, Scheurer -- -- not LP -- -- placed the causes of its settlement directly in issue. If Scheurer's settlement decisions involved, included, or implicated attorney-client communications or attorney work product, then they must be produced in discovery. <u>According to its Privilege Logs, the Lehman settlement was the work of Scheurer's lawyers, but it refuses to disclose what they did, how they did it, or why they did it -- -- all integral aspects of causation in fact</u>. *See* Walker Aff., Exhs. C and I. They are "enmeshed" in the central issues of this case.

It is undisputed that LP did <u>not</u> recommend that Scheurer settle with Lehman or advise it to pay Lehman. Under the circumstances, it is difficult to imagine how LP could be the cause of Scheurer's settlement with and payment to Lehman. <u>According to Scheurer's Privilege Logs, its lawyers were the direct and immediate causes</u>. *See* Walker Aff., Exhs. C and I. <u>By placing its settlement with and payment to Lehman "front and center" in this litigation, Scheurer has waived any claim that the direct and immediate causes of them are privileged from disclosure</u>.

The ultimate question in this case is: <u>Why did Scheurer agree to pay Lehman</u>? Or, stated another way: <u>What was the cause in fact of that fateful decision</u>? Scheurer -- -- not LP -- -- injected that issue into this case. According to Scheurer itself, the answer to this question is "enmeshed" in the documents enumerated in its Privilege Logs and those yet to be obtained from its settlement counsel. <u>There are no other documents on this issue. Scheurer produced nothing</u>. It must be ordered to produce all documents responsive to Paragraphs 1-13, 24, and 27-29 of the

Document Request. The attorney-client privilege and work product protection have been waived.[6]

### D. Scheurer Has No Basis For Objecting To The Production Of Documents Pertaining To The Defendants Themselves

In Paragraphs 18 and 19 of the Document Request, LP asked that Scheurer produce all meeting minutes of its Board of Directors, or any committee thereof, and any notes, memoranda, or other documents prepared by any of its officers or employees which mention or relate to LP. *See* Walker Aff., Exh. A. In Paragraphs 20-23, it requested all communications between Scheurer and Defendant Peck, Shaffer & Williams LLP. *See* Walker Aff., Exh. A.

Incredibly, Scheurer objected to producing the foregoing documents because they supposedly were covered by the ADR Order, the Termination Agreement, Evidence Rule 408, the attorney-client privilege, or the work product doctrine. *See* Walker Aff., Exhs. B and H. These objections do not match the documents requested. For instance, how could Board of Directors' minutes about LP possibly be covered by the ADR Order or Evidence Rule 408?

Scheurer's objections to Paragraphs 18-23 of the Document Request are devoid of any merit. It should be ordered to produce all documents responsive to them.

### E. Scheurer's Other Discovery Infractions

In its Privilege Logs, Scheurer listed numerous documents it refused to produce on the basis of the attorney-client privilege. *See* Walker Aff., Exhs. C and I, Doc. Nos. SH719-720, 723-725, 727-728, 770-771, 774-775, 777-797, and 801-814. However, each of those documents, according to the Privilege Logs themselves, is a communication from a Lehman lawyer to a Scheurer lawyer or vice versa. They clearly are not privileged, and Scheurer should be ordered to produce them.

---

[6] The result is the same for Scheurer's claim of settlement privilege. If such a privilege exists in Michigan, and LP denies that it does, then Scheurer waived it by putting its secret settlement with Lehman directly "in issue." *See Traverse Bay Area Middle School Dist. v. Michigan Dept. of Educ.,* 2007 WL 2986469 (W.D. Mich. 2007).

Scheurer was represented by the law firms of Schottenstein, Zox and Dunn in Columbus, Ohio, and Butzel & Long in Bloomington Hills, Michigan, in connection with the Lehman claims and their settlement. *See* Walker Aff., ¶6. But, Scheurer has never called for its lawyers' files in connection with responding to LP's Document Request. *See* Walker Aff., ¶¶ 6 and 13. Those files are within Scheurer's *"possession custody, or control"* for the purposes of Civil Rule 34(a)(1). Scheurer should be ordered to retrieve those files and produce all responsive documents contained therein.

## III.   **CONCLUSION**

For all of the foregoing reasons, Defendants Lancaster Pollard & Co. and Tanya K. Hahn request that their  motion be granted and that Plaintiff Scheurer Hospital be ordered to produce all of the documents enumerated in their motion.

Respectfully submitted,

*/s/ Jonathan C. Martin*
Jonathan C. Martin (P37926)
Smith Martin Powers & Knier PC
900 Washington Avenue
P.O. Box 219
Bay City, MI 48707-5704
Telephone:     (989) 892-3924
Facsimile:     (989) 892-3926
Email:  jmartin@smpklaw.com

*/s/ Alfred J. Weisbrod*
Alfred J. Weisbrod
111 West Fourth Street, Suite 1100
Dayton, OH  45402-0513
Telephone:     (937) 443-9999
Facsimile:     (937) 443-9890
Email:  alweisbrod@aol.com

*/s/ Lawrence D. Walker*
Lawrence D. Walker
Taft Stettinius & Hollister LLP
65 East State Street, Suite 1000
Columbus, Ohio  43215-4216
Telephone:     (614) 221-2838
Facsimile:     (614) 221-2007
Email:  walker@taftlaw.com

*Attorneys for Defendants*
*Lancaster Pollard & Co. and Tanya K. Hahn*

## CERTIFICATE OF SERVICE

I hereby certify that, on this, the 6th day of September, 2012, I electronically filed the foregoing Brief Of Defendants Lancaster Pollard & Co. And Tanya K. Hahn In Support Of Their Motion To Compel Plaintiff To Produce Documents with the Clerk of the Court using the ECF system, which, in turn, will serve all counsel of record.

/s/ *Jonathan C. Martin*
Jonathan C. Martin

# EXHIBIT 1

08-13555 [Dkt. No. 5207]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                               :

In re                            :     Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :     08-13555 (JMP)

            Debtors.           :     (Jointly Administered)

                               :

------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS

         The following alternative dispute resolution procedures (the "Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

## FINDINGS

         On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including any derivative contract that is a "swap agreement" or "forward contract", in each case, as such term is defined in section 101 of the Bankruptcy Code, exist as to which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties (the "Derivatives Contracts with Recovery Potential").  The Court further FINDS that certain common issues exist regarding these contracts, including questions involving appropriateness of setoff, termination, valuation and computation of termination payments, and notice.  The Court further FINDS that substantial value may be recovered for the estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation. The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

      The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

      1.  <u>Standing Mediation Order</u>.  All provisions of the General Order #M-143, adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "<u>Standing Order</u>") shall apply to the mediations to be conducted under this Order.

      2.  <u>Derivatives ADR Counterparties</u>.  To date, the Debtors have identified approximately two hundred fifty (250) counterparties (which number will surely increase) to Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "<u>Derivatives Counterparties</u>"); provided, however, that the term Derivatives Contract with Recovery Potential shall not include any cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction or repurchase agreement in respect of securities or loans.

3.  <u>Derivatives ADR Disputes</u>.  Any Debtor may designate any dispute regarding a Derivatives Contract with Recovery Potential to the Derivatives ADR Procedures by serving on a Derivatives Counterparty a copy of this Order and a Derivatives ADR Notice (as defined below) (collectively, the "<u>Derivatives ADR Package</u>").

a.  Debtors shall not implement Derivatives ADR Procedures with respect to a Derivatives Contract with Recovery Potential that (i) has not been purportedly terminated and (ii) with respect to which a Derivatives Counterparty has not failed to make a payment, or perform any other obligation, due, if any, to the Debtor(s) (without regard to any provision in a Derivatives Contract with Recovery Potential that purports to permit a Derivatives Counterparty to withhold performance by reason of a default by a Debtor or its affiliates).

b.  Debtors shall make commercially reasonable efforts to minimize the frequency of service of Derivatives ADR Notices on any one Derivatives Counterparty.

c.  Any trustee, indenture trustee or party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to the applicable Derivatives Contract with any of the Debtors (such persons or entities collectively referred to as "<u>Indenture Trustees</u>," and each singly as an "<u>Indenture Trustee</u>") shall be subject to this Order.

d.  For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives Counterparty or Indenture Trustee, as the case may be, shall be deemed adequate if such service or notice is provided to such Derivatives Counterparty, such Indenture Trustee, a legal guardian, estate representative, or other representative and such party's counsel who have appeared in these cases by (i) email and (ii) at the option of the Debtors either (x) hand delivery, or (y) first class mail, or (z) overnight mail.

4. <u>Settlement of Disputes During the Derivatives ADR Procedures</u>. Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a Derivatives ADR Dispute at any time before, during, or following the designation of a Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the parties, provided that such settlement

a.    complies with (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667], or (iii) other orders in these bankruptcy cases permitting such settlement, or

b.    is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors' Committee (the "<u>Creditors' Committee</u>"), the contents of any papers submitted during the mediation stage described below, and all discussions in mediation shall remain confidential and privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

5. <u>Participation Mandatory</u>.

a.    Unless otherwise provided in a specific order applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty or Indenture Trustee with Authority (as defined below), after service of a Derivatives ADR Package on a Derivatives Counterparty or Indenture Trustee with Authority (i) compliance with the Derivatives ADR Procedures in this Order is mandatory in the specified Derivatives ADR Disputes for the

applicable Debtor or Debtors, Derivatives Counterparty and Indenture Trustee with Authority; and (ii) no party is required to settle or compromise any dispute or enter into a particular settlement or compromise, but each Debtor serving a Derivatives ADR Package, each Derivatives Counterparty, and each Indenture Trustee with Authority must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the Derivatives ADR Procedures specified below for all Derivatives ADR Disputes covered by such Derivatives ADR Package.

      b.    With respect to any Derivatives ADR Package served on an Indenture Trustee, within the period provided in paragraph 8(b) for service of a response thereto by an Indenture Trustee, Debtors and such Indenture Trustee shall review the governing documents to determine whether the Indenture Trustee has authority to participate and to settle the Derivatives ADR Dispute covered by the Derivatives ADR Notice on behalf of holders ("Authority").

          i.    If the Indenture Trustee has Authority, it shall participate in the Derivatives ADR Procedures on behalf of holders to the extent authorized by such documents.

         ii.    If the Indenture Trustee lacks Authority via the governing documents, it shall contact the holders for which it acts as Indenture Trustee through the clearing systems or when possible by a direct written communication that: (v) advises such holders that the Debtors dispute holders' claims; (w) transmits to them the applicable Derivatives ADR Notice; (x) invites them to participate in the Derivatives ADR Procedures as an alternative to litigation;

5

(y) encourages them to communicate directly with the Debtors; and (z) offers to take holders' direction in accordance with the governing documents to participate in the Derivatives ADR Procedures on behalf of such directing holders.

iii. In taking the steps outlined in this paragraph 5(b), Indenture Trustees shall make commercially reasonable efforts to act as promptly as possible under the prevailing circumstances.

c. Nothing contained in this paragraph 5 with respect to Indenture Trustees shall relieve or be construed to relieve any Derivatives Counterparty from compliance with this Order.

d. All rights, remedies, claims and defenses of any Derivatives Counterparty, Indenture Trustees, holders and Debtor in good faith compliance with the Derivatives ADR Procedures shall not be impaired, waived or compromised in any further proceedings in these cases should no settlement or compromise result from participation in these Derivatives ADR Procedures. Participation in the Derivatives ADR Procedures by a Derivatives Counterparty, Indenture Trustee, or holder shall not waive the defense of lack of in personam jurisdiction, if any, which defense shall be preserved.

6. No Substitute For Claims Procedures. The Derivatives ADR Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims procedures. Nothing contained herein, however, shall (a) prevent a Derivatives Counterparty from asserting in any respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Derivatives Contract with Recovery Potential or any other valid defense to a Debtor's demand

6

thereunder or (b) be construed to abridge, enlarge, or otherwise modify the rights and obligations of Debtors or Derivatives Counterparties under a Derivatives Contract with Recovery Potential or applicable law or to provide a right or remedy under a Derivatives Contract with Recovery Potential to Debtors or Derivatives Counterparties that is not provided thereby or by applicable law.

7.   <u>Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivatives Counterparties</u>.  If a Derivatives Counterparty previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a Derivatives ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Derivatives ADR Procedures.

**NOTICE/RESPONSE STAGE**

8.   <u>Notice/Response</u>.  The initial stage of the Derivatives ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives ADR Dispute on a consensual basis (the "<u>Notice/Response Stage</u>").  The Notice/Response Stage shall include:

a.   <u>Derivatives ADR Notice</u>.  Debtors shall serve upon a Derivatives Counterparty or Indenture Trustee (and its attorneys who have appeared in these cases) a notice containing sufficient information regarding the Derivatives ADR Dispute to make the Derivatives Counterparty or Indenture Trustee aware of the nature of Debtor's affirmative claim, a

7

brief explanation setting forth the basis for the demand and the amount, and of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (a "Derivatives ADR Notice"). Service of a completed Derivatives ADR Notice in the form annexed to this Order as Exhibit "A" shall presumptively be deemed to comply with this Order.

b.   Derivatives Counterparty's Response to Notice. A Derivatives Counterparty must respond to the Derivatives ADR Notice in writing within thirty (30) calendar days from the date of the Derivatives Counterparty's receipt of the Notice. An Indenture Trustee with Authority contained in the governing documents must respond to the Derivatives ADR Notice in writing within forty-five (45) calendar days from the date of such Indenture Trustee's receipt of the Derivatives ADR Notice, and an Indenture Trustee with Authority obtained by way of direction from holders pursuant to paragraph 5(b) above, must respond to the Derivatives ADR Notice within thirty (30) days from the date of receipt of such direction from holders. The response options available to a Derivatives Counterparty or an Indenture Trustee with Authority are as follows (the "Responses"):

  i.   Agreeing to Settle the Demand. If a Derivatives Counterparty or an Indenture Trustee with Authority agrees

8

to settle the demand in the Derivatives ADR Notice, the
Counterparty shall state in writing that the offer of
settlement in the Derivatives ADR Notice is accepted.  The
parties will then execute a settlement and general release
(including a confidentiality provision) and, if the matter is
in litigation, the Debtor shall dismiss any applicable claims
in a lawsuit or adversary proceeding with prejudice upon
execution of the release; or

ii.   Denying the Demand.  A Derivatives Counterparty or
Indenture Trustee with Authority may decline to settle for
the amount stated in the demand in the Derivatives ADR
Notice, in which case the Derivatives Counterparty or
Indenture Trustee with Authority must include a brief
explanation in the Response to the Derivatives ADR Notice
setting forth the reason(s) for such denial.  In addition, the
Derivatives Counterparty or Indenture Trustee with
Authority may provide a counteroffer to the demand in the
Derivatives ADR Notice.  Service of a completed Response
to a Derivatives ADR Notice in the form annexed to this
Order as Exhibit "B" shall presumptively be deemed to
comply with this Order.

c.   Failure to Respond.  Failure to provide a timely Response to the
Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may

9

result, at the option of Debtors, either in an application to the Court (with

notice to any applicable Derivatives Counterparty or Indenture Trustee)

for Sanctions (as defined below) as set forth below, including an order or

judgment for recovery of amounts demanded by Debtors in the

Derivatives ADR Notice, or immediate entry into the mediation stage.

d.   Reply to Response.  The Debtor shall have fifteen (15) days from the date

of the receipt of the Response to serve a Reply to the Response to the

Derivatives ADR Notice (which Response shall have been determined

with the benefit of consultation between Debtors and the Creditors'

Committee), in which the Debtor shall (i) modify its Demand, (ii) respond

to any counteroffer, (iii) provide additional information in support of its

demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer

in which case the Derivatives ADR Dispute will automatically proceed to

the Mediation Stage.

9.   Request for Initial Settlement Conference.  At any time in the

Notice/Response Stage, either a Debtor, Derivatives Counterparty or Indenture Trustee with

Authority may request an initial telephonic settlement conference by written request, to be held

within ten (10) calendar days, and, in the case of Indenture Trustees with Authority, to be held

within fifteen (15) business days.  Within four (4) business days of a receipt of such a request,

the other parties must respond by acceptance of one of the proposed dates and times or by a

proposal for an initial settlement call no later than five (5) calendar days from the earliest date set

forth in the written request.  In the case of Indenture Trustees with Authority, within ten (10)

business days of a receipt of such a request, the other parties must respond by acceptance of one

of the proposed dates and times or by a proposal for an initial settlement call no later than fifteen (15) business days from the earliest date set forth in the written request. If an acceptable date cannot be achieved through this process, the parties shall immediately proceed to the Mediation Stage. At least one hour shall be reserved for the initial conference to discuss settlement. No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present. Settlement conferences during the Notice/Response Stage may be held in person if both parties agree in writing.

## MEDIATION STAGE

10. <u>Mediation</u>. Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>"). The Debtors shall transmit on a rolling basis as promptly as possible to the mediators appointed pursuant to paragraph 10(a) hereof sets of Derivatives ADR Notices and any applicable Response(s) and Replies thereto for purposes of allocating specific mediations pursuant to paragraph 10(b)(i) hereof.

      a.    <u>Choice of Mediator</u>. James Freund, David Geronemus and Ralph Mabey are APPOINTED as the mediators for Derivatives ADR Disputes reaching the Mediation Stage. If any named mediator is not available to serve as mediator, an alternate mediator shall be selected by the Court upon notice to the Debtors, the Creditors' Committee, all Derivatives Counterparties and Indenture Trustees.

b.    <u>Powers of Mediator</u>. The mediators shall have the broadest possible discretion consistent with the Standing Order, including (i) the manner of allocating among themselves specific mediations on a fair and equitable basis; and (ii) the ability to consolidate mediations involving the same Derivatives Counterparty upon application by such Derivatives Counterparty and consultation with the Debtors.

c.    Once a specific mediator has been selected and notice of such selection has been conveyed to the parties, the Debtor and the Derivatives Counterparty or Indenture Trustee with Authority together shall contact the mediator to schedule the initial mediation date.

d.    <u>Mediation Sites</u>. All mediation proceedings will take place in New York, New York, unless agreed to by the parties and the mediator.

e.    <u>Mediation Briefs</u>. Any party to a Mediation may submit a Mediation Brief, with service upon the other parties to the Mediation and upon the Creditors' Committee; provided, however, the Mediator may order that the parties to serve upon each other, the Mediator, and the Creditors' Committee a Mediation Brief. If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator and the Creditors' Committee. Any such Mediation Brief shall be served and filed so as to be received no later than five (5) calendar days prior to the scheduled initial Mediation Date. No Mediation Brief shall be filed with the Court.

f.    <u>Appearance at Mediations</u>.  Unless otherwise ordered by the mediator all participants in the mediation for the applicable Derivatives ADR Dispute, must appear in person with a business principal who has settlement authority; *provided, however,* that, to the extent acceptable to the mediator, the business principal with settlement authority on behalf of a Derivatives Counterparty may attend the mediation by video conference at the sole expense of the Derivatives Counterparty.  The Creditors' Committee may attend and participate in all mediations hereunder. Counsel may also be present and participate.

g.    <u>End of Mediation</u>.  The mediation shall end upon request of a party and concurrence by the mediator.

## OTHER PROVISIONS

11. <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12. <u>Sanctions for Parties</u>.  Each Debtor, Derivatives Counterparty and Indenture Trustee must participate in good faith with these Derivatives ADR Procedures with regard to the ADR Disputes specified in the applicable Derivatives ADR Notice.  If, after notice and a hearing, the Court determines that a party has not complied with the Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors, Derivatives Counterparty or Indenture Trustee, as the case may be, may be subject to such sanctions as the Court deems appropriate (the "<u>Sanctions</u>").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the Derivatives ADR Procedures, the Court may, without the need for further motion by any party, schedule a hearing

13

and order Sanctions. Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage. Sanctions may include, but are not limited to:

  a.  <u>Against Debtors</u>: (i) attorneys' fees incurred by a Derivatives Counterparty (including an Indenture Trustee with Authority) with respect to the Derivatives ADR Procedures after the receipt of an ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the Derivatives ADR Procedures as to one or more Derivatives Contracts with Potential Recovery; and/or (iii) rejection of some or all claims asserted by Debtors in the applicable Derivatives ADR Dispute.

  b.  <u>Against Derivatives Counterparties (including Indenture Trustees with Authority)</u>: (i) attorneys' fees incurred by the Debtors with respect to the Derivatives ADR Procedures after the sending of an ADR Package; (ii) fees and costs of the Mediator; (iii) an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice.

13. <u>Confidentiality</u>. The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order. No statements or arguments made or positions taken by the mediator, the applicable Debtors, Derivatives Counterparties, Indenture Trustee or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage may be disclosed by the mediator or any such parties or their attorneys and advisors to the Court or any third party; *provided, however*, that Indenture Trustees may disclose such statements, arguments and positions as may become necessary with their respective noteholders and advisors subject to these same

confidentiality provisions. Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving is such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible. In addition, the mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; *provided, however*, the mediator shall on a monthly basis beginning 60 days following entry of this Order report to the Court the status of the mediation efforts but shall not disclose the content thereof, which report shall include the number of ADR Notices served on Derivatives Counterparties, the number of settlements reached after mediation, the number of mediations still pending, the number of mediations that have terminated without settlement, and the cumulative dollar amount of settlements reached with Derivatives Counterparties following service of ADR Notices. Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the Derivatives ADR Procedures including Settlement Conferences and Mediation Stage.

14. <u>Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights Unaffected</u>. Unless a Derivatives Counterparty, Indenture Trustee or a Debtor affirmatively waives its right to a jury trial, arbitration or exclusive foreign forum selection that otherwise may exist, participation in the Derivatives ADR Procedures shall not waive or otherwise modify such rights. All parties' rights and defenses to contest the assertion of a jury trial or arbitration or exclusive foreign forum selection right by any other party are fully preserved.

15. <u>Fees</u>. Except as otherwise provided herein, each party to the Mediation shall bear its own counsel fees and other costs of the Derivatives ADR Procedures, including Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and costs charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this

Order and (ii) nothing contained herein shall be deemed to vary the terms of any Derivative

Contract with Recovery Potential in respect of the reimbursement of fees and expenses.

**SO ORDERED:**

Dated: New York, New York
          September 17, 2009

                     _s/ James M. Peck_
                     UNITED STATES BANKRUPTCY JUDGE

16

Exhibit A

**Form of Derivatives ADR Notice**

Derivatives ADR Notice No.: _____

Debtor(s): _____      Derivatives Counterparty: _____
        Name(s)                                Name(s)

                    or

            Indenture Trustee: _____
                            Name

Derivatives Contract: _____
_____
_____


Settlement Demand:  $ _____

Explanation of Basis for Settlement Demand: _____
_____
_____
_____
_____
_____
_____
_____


            Date of Derivatives ADR Notice: _____

            Date of Service: _____

            Response Due Date: _____


Debtor Contact:   [Name]
                  [Address]
                  Telephone Number: _____
                  Email: _____

Exhibit B

**Form of Response to Derivatives ADR Notice**

Derivatives Counterparty: _____
                                        Name

    or

Indenture Trustee with Authority: _____
                                                Name

Response to Derivatives ADR Notice No.: _____

☐ Agree to Settlement Demand

☐ Denial of Settlement Demand          ☐ Counteroffer

                                        Counteroffer Amount: $_____

Explanation of Basis for Counteroffer/Denial of Settlement Demand: _____
_____
_____
_____
_____
_____
_____
_____
_____

Counterparty Contact:  [Name]
                                Telephone Number: _____
                                Email: _____