UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCHEURER HOSPITAL,

     *Plaintiff,*            CASE NO: 12-cv-11536

v.                               DISTRICT JUDGE THOMAS L. LUDINGTON
                                 MAGISTRATE JUDGE CHARLES E. BINDER

LANCASTER POLLARD & CO.,
TANYA K. HAHN,
JASON L. GEORGE, and
PECK, SHAFFER & WILLIAMS, LLP,

     *Defendants.*
_____/

**ORDER ON:**

**1. Motion To Compel Plaintiff To Make Initial Disclosures (Doc. 24)**
**2. Motion To Compel Plaintiff To Produce Documents (Doc. 25)**
**3. Motion To Compel Plaintiff To Fully Comply With Deposition Notice (Doc. 30)**
**4. Motion For Sanctions For Failure To Make Disclosures (Doc. 31)**
**5. Motion To Compel Plaintiff To Answer Interrogatories (Doc. 33)**
**6. Motion To Compel Plaintiff To Provide Complete Discovery Responses (Doc. 36)**
**7. Motion For Protective Order (Doc. 54)**
**8. Motion For Court To Consider Changes To Proposed Protective Order (Doc. 65)**

       This order is entered under the authority given to this Magistrate Judge in an order of reference issued by U.S. District Judge Thomas L. Ludington pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.**     **Introduction**

    Plaintiff seeks damages from Defendants for their alleged malpractice, which Plaintiff contends caused it to be liable to Lehman Brothers Special Financing ("Lehman"), which is not a party to this lawsuit. The facts are largely uncontested. In 2001, Plaintiff sought financial advice from Defendants LANCASTER Pollard and Tanya K. Hahn (collectively "LP") regarding bond financing for a capital improvement project. LP recommended that Plaintiff enter into an interest rate swap agreement with Lehman in order to hedge its interest rate risk. Plaintiff entered into the

swap agreement with Lehman in 2001. In 2008, Lehman filed a bankruptcy petition. LP then advised Plaintiff to stop making payments due under the swap agreement, to terminate said agreement, and to enter into a replacement swap agreement with another entity that is not a party to this lawsuit. LP alleges that the advice it gave Plaintiff was based on advice it received from Defendants Peck, Shaffer & Williams, LLP, and Jason L. George (collectively "Defendant PS&W").

Plaintiff contends that LP's advice was erroneous and resulted in Lehman filing a claim against Plaintiff in its bankruptcy action. Lehman's claim against Plaintiff contended that Plaintiff's attempted termination was not effective and that Plaintiff owed the unpaid monthly amounts, the value of the swap agreement, and accrued interest. Plaintiff settled with Lehman, pursuant to the bankruptcy court's Alternate Dispute Resolution ("ADR") order, for $595,000. As part of that settlement process, a settlement agreement[1] was executed between Plaintiff and Lehman.

Although the various motions filed by Defendants seek different forms of relief, as well as the imposition of sanctions, oral argument revealed that these motions in essence boil down to the production of information surrounding the details of the settlement process and the ultimate settlement agreement between Plaintiff and Lehman. Although not opposed to these requests, Plaintiff seeks a protective order before it will disclose any such information. Oral argument was held on October 25, 2012, and the Court received two documents for *in camera* inspection: (1) a draft protective order that was circulated but not stipulated to by the parties, and (2) the settlement

---

[1]The settlement agreement is actually titled a "termination agreement" and is referred to in the briefs variously as the "settlement (termination) agreement" or the "termination/settlement agreement." The Court will use the term "settlement agreement" to refer to this document.

agreement between Lehman and Plaintiff. I therefore find that the matter has been submitted and the motions are ready for decision.

On November 2, 2012, Defendant PS&W filed a motion for the court to consider changes to the proposed protective order by Lehman Brothers as an additional reason to deny Plaintiff's motion for protective order. Since Defendant PS&W's motion (Doc. 65) is more akin to a supplement to Defendants' response to Plaintiff's motion for protective order, it will be considered when addressing Plaintiff's motion for protective order. Accordingly, the "motion" will be denied as moot.

## II.    Analysis and Conclusions

Under Rule 26(b) of the Federal Rules of Civil Procedure, "the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Rule 34 authorizes the inspection and testing of tangible things and Rule 37 allows a party to move to compel discovery.

### A.    Motions to Compel

During oral argument, the parties agreed that the types of documentary evidence sought in these motions fall into four categories: (1) the settlement agreement between Plaintiff and Lehman; (2) negotiation communications between Plaintiff's attorney and Lehman's attorney as to how the $595,000 settlement amount was reached; (3) attorney-client privileged communication between Plaintiff and its counsel in reaching the settlement (both parties agree these communications are privileged, but Defendants assert that Plaintiff waived the privilege and Plaintiff disagrees); and

3

(4) documents prepared by Plaintiff's attorney toward settlement and the fees for which Plaintiff is now seeking reimbursement from Defendants.

### 1. Categories 1, 2 and 4

During oral argument, Plaintiff stated that, with a protective order, it would produce the settlement agreement, as well as the negotiation communications between Plaintiff's counsel and Lehman's counsel as to how the settlement amount of $595,000 was reached, i.e., categories 1 and 2. As to the Category 4 materials, Plaintiff also indicated it would provide any non-privileged information, such as the amount of interest accrued between the time of the attempted termination (of the swap agreement) notice. During oral argument, Defendants indicated that they seek this production to learn why Plaintiff settled with Lehman, i.e., whether it was really because of any advice given to Plaintiff by Defendants,[2] and whether that settlement was fair and reasonable.

As discussed below, Plaintiff's desire for a protective order stems in large measure from the bankruptcy court's ADR order that led to the settlement with Lehman, which also contains the following confidentiality provision:

> No statements or arguments made or positions taken by the mediator, the applicable Debtors . . . during any part of the alternate dispute resolution process, including Settlement Conferences and the Mediation Stage may be disclosed by the mediator or any such parties or their attorneys and advisors to the Court or any third party . . . . Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving in such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible . . . . Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the Derivatives ADR Procedures including Settlement Conferences and Mediation Stage.

(Doc. 54, Ex. 1 at 14.)

---

[2]Defendants also contend that the swap agreement, as an executory contract, was unenforceable in bankruptcy unless assumed by the debtor; thus, they question whether Plaintiff was truly obligated to Lehman. *See N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 521-22, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984).

4

As I read the terms of the bankruptcy court's ADR order, I find no prohibition against Plaintiff disclosing the settlement agreement, statements made to arrive at the settlement amount, and a detailed billing statement prepared by Plaintiff's attorney showing what services were rendered and what fees were charged in reaching the settlement, as long as that information is "otherwise admissible" within the meaning of Rule 408 of the Federal Rules of Evidence. For the reasons set forth below, I find that they are.

Since the ADR order expressly refers to Rule 408, the "otherwise admissible" test is this Court's touchstone. Rule 408 provides that evidence of "furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim" or "conduct or a statement made during compromise negotiations about the claim" is not admissible on behalf of any party "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).

In *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F. 3d 976, 983 (6th Cir. 2003), the Sixth Circuit held that "any communication made in furtherance of settlement are privileged."[3] However, *Goodyear* recognized a difference between settlement communications and the settlement agreement itself, and held that the settlement privilege applied only to settlement communications and not the agreement itself. *Id.* at 981. In addition, while Rule 408 would preclude admission of statements made during negotiations for the purpose of proving or disproving the validity or amount of a disputed claim or for impeachment purposes,[4] *Goodyear*

---

[3]It has been noted that the Sixth Circuit "appears to be the only one of our sister circuits to adopt" a "settlement privilege." *In Re MTSG, Inc.*, 675 F.3d 1337 (D.C. Cir. 2012).

[4]The "terms of Rule 408 do not create a privilege from discovery. Rule 408 limits the admissibility of compromise and negotiations when offered for particular purposes but allows their admission for other purposes." *Transportation Alliance Bank, Inc. v. Arrow Trucking Co.,* No. 10-cv-016-GKF-FHM, 2011 WL 4964034, at * 1

5

extends the settlement privilege in our circuit to preclude discovery or admission of statements made during negotiations for *any* purpose.

However, the *Goodyear* rule predates two amendments to Rule 408, which occurred in 2006 and 2011. Moreover, neither Rule 408 nor *Goodyear* preclude discovery or admissibility of the settlement agreement itself or the basic components of the agreement, such as statements explaining what claims were settled and for what amount. Accordingly, I conclude that Defendants are entitled to disclosure of the settlement agreement itself and a breakdown of what claims were actually settled and for what amounts. *See Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10-cv-00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) (holding that the settlement privilege did not apply to the amount received or the terms of the settlement agreement but did apply to the amount the plaintiff claimed it was owed and the reasons the parties agreed to an amount less than what the plaintiff claimed to be the total due).

This result is not impaired by the fact that the settlement agreement between Plaintiff and Lehman contains a confidentiality provision.

> [A]greements are not protected from discovery simply because they have been denominated "confidential" by the parties. "[A] general concern for protecting confidential information does not equate to privilege [. . .]. [I]n the context of settlement agreements the mere fact that settling parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality."

*Oberthaler v. Ameristep Corp.*, No. 5:08-cv-1613, 2010 WL 1506908, at *1 (N. D. Ohio April 13, 2010) (citation omitted) (granting motion to compel because settlement amounts were relevant to issue of damages); *American Guar. and Liab. Ins. Co. v. CTA Acoustics, Inc.*, No. 05-80-KKC, 2007 WL 1099620, at *4 (E.D. Ky. April 10, 2007) ("the confidential settlement agreement is not

---

(N.D. Okla. Oct. 19, 2011)

privileged . . . [and] is not protected from discovery simply because it has been denominated 'confidential' by the parties"); *Phoenix Bond & Indem. Co. v. Bridge*, No. 05 C 4095, 07 C 1367, 2012 WL 8706 (W. D. Ill. Jan. 2, 2012) (noting that "[a]lthough the settlements may have been subject to confidentiality agreements, the Court will be using them as the basis for an offset of a judgment that must be entered in the public record.")

Accordingly, the Court therefore will **GRANT** Defendants' motion to compel, requiring Plaintiff to produce:

1) the settlement agreement entered into between Plaintiff and Lehman, and

2) any statements or communications that would explain what claims were actually settled and for what amounts, as well as a detailed billing describing the fees charged in reaching the settlement.

### 2. Category 3

The third category of documents concerns attorney-client privileged communication between Plaintiff and its counsel in reaching the settlement. Both parties agree that these communications are privileged. However, Defendants believe Plaintiff has waived the privilege.

Since Plaintiff's claims arise under Michigan law, i.e., malpractice, breach of contract, and negligence, Rule 501 of the Federal Rules of Evidence provides that state law governs the privilege question. Michigan law is "harmonious" with federal law on this topic and thus either can be used to lay out the general principles governing attorney-client privilege. *360 Const. Co. v. Atsalis Bros. Painting Co.*, 280 F.R.D. 347, 351 (E.D. Mich. 2012).

The attorney-client privilege serves to shield confidential communications between a lawyer and client from disclosure either through discovery or at trial. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). The attorney-client privilege encourages

"'full and frank communication between attorneys and their clients and thereby promotes broader public interests in the observance of law and the administration of justice.'" *In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005) (quoting *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S. Ct. 2081, 141 L. Ed. 2d 379 (1998)). The Sixth Circuit has recognized that "the attorney-client privilege is a necessary foundation for the adversarial system of justice." *Lott*, 424 F.3d at 450. Thus, the Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Privileged matters are protected from discovery. Fed. R. Civ. P. 26(b)(1), (5).

The attorney-client privilege, however, can be expressly or implicitly waived by the client. *Clevenger v. Dillard's Dep't Stores, Inc.*, No. 1:02 CV 558, 2007 WL 127978, at *4 (S.D. Ohio Jan. 11, 2007). By voluntarily disclosing her attorney's advice to a third party, for example, a client is held to have waived the privilege because the disclosure runs counter to the notion of confidentiality. *In re Grand Jury Proceedings of Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir.1996) (citing *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991)); *see also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (privilege waived by voluntary disclosure to third parties). Implied waivers of privilege are construed narrowly. *Lott*, 424 F.3d at 453; *Clevenger*, 2007 WL 127978, at *4.

Where, as here, a waiver of attorney-client privilege is alleged, courts must impose a waiver (if any) no broader than needed to ensure the fairness of the proceedings before it. *Lott*, 424 F.3d at 453 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)); *Clevenger*, 2007 WL 127978, at *4. In this district:

> When a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorney as factual support for the defense, and when counsel's advice in some way supports the defendant's good faith

8

> belief, the defendant has put his counsel's advice 'at issue' and thereby waives the attorney client privilege on the narrow subject matter of those communications.

*Henry v. Quicken Loans, Inc.,* 263 F.R.D. 458, 469 (E.D. Mich. 2008). Therefore, where a party "chose to inject the advice of its counsel into this litigation[,]" it "should not be a surprise to find that the privilege has been waived." *Id.* at 470. *See also People v. Houston*, 532 N.W.2d 508, 516 (Mich. 1995) ("When the client alleges a breach of duty to him by the attorney, the privilege is waived as to all communications relevant to that issue."). The same principle applies whether the charge of fraud or unprofessional conduct against the attorney is made directly or indirectly. *360 Const. Co.*, 280 F.R.D. at 352 (citing *Everett v. Everett*, 29 N.W.2d 919, 922 (Mich. 1947)).

In the instant case, however, the question is more complex than contemplated by the principles above because Plaintiff is not alleging the malpractice of the attorney for which it asserts attorney-client privilege. Plaintiff has alleged in its complaint that attorney George was negligent. However, the privilege Plaintiff asserts is between Plaintiff and its lawyer who negotiated the settlement with Lehman. Defendants seek this information because the fact of and scope of the settlement with Lehman is the source of the damages that Plaintiff seeks to recoup in this lawsuit against Defendants.

While generally "harmonious" on the issue of attorney-client privilege, the point at which Michigan courts diverge from federal courts regarding the attorney-client privilege provides guidance. Michigan courts consider fairness balancing principles when determining whether to imply waivers of the attorney-client privilege. In *Howe v. Detroit Free Press, Inc.,* 487 N.W.2d 375 (Mich. 1992), the court held that "the privilege ends at the point where the defendant can show that the plaintiff's civil claim and the probable defenses thereto are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." *Id.* at 382.

Federal courts in Michigan have recognized and applied the principles from *Howe* to diversity jurisdiction cases such as the instant case. *See In re Perrigo Co.*, 128 F.3d 430 (6th Cir. 1997); *Dow Chem. Co. v. Reinhard*, No. 07-12012, 2008 WL 2245007, at *4-5 (E.D. Mich. May 30, 2008). Under the *Howe* balancing test, Defendants must demonstrate that the material to be discovered is relevant to their cases and that Plaintiff's assertion of the privilege seriously undermines their ability to defend against Plaintiff's claims. *Howe*, 487 N.W.2d at 383-84; *In re Perrigo*, 128 F.3d at 442-44. "Fairness considerations also require an assessment of the importance of the privilege to its holder." *Perrigo*, 128 F.3d at 444; *Howe*, 487 N.W.2d at 383.

In the instant case, Plaintiff's claims for damages stem from the liability it incurred to Lehman (as evidenced by the settlement agreement) which Plaintiff contends was a direct result of its reliance on erroneous advice given by Defendants. As a result, the Court concludes that Defendants have demonstrated that the communications between Plaintiff and its counsel during the Lehman settlement negotiations are relevant to the scope of their potential liability and that Plaintiff's assertion of the privilege seriously undermines their ability to defend against Plaintiff's claims, which are solely based upon those communications. *See Perrigo*, 128 F.3d at 444. I further find that the importance of the privilege to Plaintiff is not as significant as it may be to Lehman, who has chosen not to join this action to protect whatever interests it has. I therefore conclude that Plaintiff has waived its attorney-client privilege and will **GRANT** Defendants' motions to compel as to communications between Plaintiff and its counsel regarding the settlement negotiations and ultimate settlement agreement with Lehman. *See Stokes v. Xerox Corp.*, No. 05-CV-71683-DT, 2006 WL 6686584, at *5 (E.D. Mich. Oct. 5, 2006) (holding that the plaintiff's attorney-client privilege regarding previous confidential settlement agreement with a different employer "must yield to Defendant's right to discover this information in this [wrongful discharge]

10

action which Plaintiff herself initiated"); *Tocco v. Richman Greer Prof. Ass'n*, No. 11-CV-10310, 2012 WL 1166620, at *4 (E.D. Mich. April 9, 2012) ("fairness considerations tilt the balance in favor of finding that Plaintiff impliedly waived his privilege" because attorneys had personal knowledge of issues relevant to lawsuit such as the possibility of suing defendant on the debt and discussions in a meeting that plaintiff relied upon as one of the bases supporting his complaint).

Although concluding that these categories of documents are discoverable, this finding neither expresses nor implies any opinion as to the trial admissibility of this information.

### B. Motion for Protective Order

Plaintiff argues that it seeks a protective order to avoid breaching confidentiality provisions in both the bankruptcy court's ADR order (which Plaintiff has produced) and in the settlement agreement (which has not been produced but has been provided to the Court for *in camera* inspection). In addition, Plaintiff stated at oral argument that Lehman wants the basis of and terms of the settlement agreement to remain undisclosed because Lehman has other outstanding lawsuits and it would like to prevent the other litigants from knowing the details of the settlement between itself and Plaintiff.

Defendants contend that Plaintiff was not obligated to settle with Lehman, and since Plaintiff is suing Defendants because of that settlement, Plaintiff cannot now claim that the settlement cannot be disclosed. To the extent Plaintiff is in a box, Defendants claim Plaintiff did not get put in the box but rather climbed into the box itself. Defendants further note that Plaintiff's purported reasons for seeking the protective order are to avoid violating the bankruptcy court's order and to protect Lehman from others knowing what formula was used to arrive at the settlement amount, and, since Lehman could have intervened but chose not to, there is no party to protect in this suit.

As noted above, the bankruptcy court's ADR order contains a confidentiality provision and, based on the Court's *in camera* inspection, the settlement agreement entered into between Plaintiff and Lehman also contains a confidentiality provision which is even broader than that found in the ADR order.

"While district courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and 'is circumscribed by a long-established tradition' which values public access to court proceedings." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). "'The presumption of access is based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). Therefore, the parties should not be allowed to adjudicate for themselves which "particular documents justify court imposed secrecy . . . based upon their own self-interest." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). "Under Rule 26(c)(1), protective orders restricting the disclosure of information may only be issued for 'good cause' [and] [t]he party seeking protection bears the burden of demonstrating that there is good cause for restricting the disclosure of information at issue." *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1357 (D.C. Cir. 2011). "For good cause to exist, the party seeking to limit the disclosure of discovery materials must show that 'specific prejudice or harm will result if no protective order is granted.'" *Id.* at 1357-58 (citations omitted). If the party seeking protection meets that burden, then the court must balance the public and private interests to determine whether a protective order is necessary. *Id.* at 1358. Where the information sought to be protected will be offered at trial, only the most compelling showing will justify limitations on disclosure. *Id.*

12

In the instant case, Plaintiff has disclosed the settlement amount but seeks protection from disclosure of the settlement agreement itself because it does not want to violate the terms of the ADR order entered in the bankruptcy court, nor does it want to violate the terms of the settlement agreement. Although Plaintiff's desire to abide by the confidentiality provisions may sound like "good cause," I find that Plaintiff's assertions fall short of the showing of specific harm or prejudice necessary to justify imposition of a protective order.

The only assertions of actual prejudice or harm made by Plaintiff reference the non-party Lehman and Lehman's desire to shield the specifics of its settlement agreement with Plaintiff from other litigants.[5] Although Plaintiff's assertions of Lehman's concerns may be chivalrous, they do not reveal any specific prejudice or harm to any party and thus miss the mark. I further find that since the settlement agreement is the basis for Plaintiff's claims against Defendants, some form of it will likely be introduced at trial. Since Plaintiff has failed to meet the ordinary good cause threshold, it follows that it cannot meet the "most compelling" standard required for evidence likely to be offered at trial.

## III.   Order

For the reasons stated above, **IT IS ORDERED** that:

Defendant PS&W's motion to consider changes to proposed protective order (Doc. 65) is construed as a supplement to its response to Plaintiff's motion for protective order and is **DENIED as MOOT**.

---

[5] Even if Lehman's interest were taken into account, I find the result would be the same. *See Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination).").

13

The Motion to Compel Plaintiff To Make Initial Disclosures (Doc. 24), Motion to Compel Plaintiff to Produce Documents (Doc. 25), Motion to Compel Plaintiff to Fully Comply With Deposition Notice (Doc. 30), Motion to Compel Plaintiff to Answer Interrogatories (Doc. 33), and Motion to Compel Plaintiff to Provide Complete Discovery Responses (Doc. 36) are **GRANTED as follows**:

Plaintiff shall produce to Defendant the following classes of information:

(1) the settlement agreement between Plaintiff and Lehman;

(2) any statements or communications that would explain what claims were actually settled and for what amounts, and a detailed billing describing what fees were charged in reaching the settlement;

(3) negotiation communications between Plaintiff's attorney and Lehman's attorney as to how the $595,000 settlement amount was reached;

(4) communication between Plaintiff and its counsel in reaching the settlement; and

(5) documents prepared by Plaintiff's attorney toward settlement, and the fees for which Plaintiff is now seeking reimbursement from Defendants.

Plaintiff shall comply with this order on or before **December 7, 2012**.

Defendant's Motion for Sanctions (Doc. 31) is **DENIED** because the Court finds that Plaintiff has not engaged in sanctionable conduct.

Plaintiff's Motion for Protective Order (Doc. 54) is **DENIED**.

Failure to comply with this order may result in imposition of sanctions under Rule 37(b).

Review of this order is governed by 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and E.D. Mich. LR 72.1(d).

                                              s/ **Charles E Binder**
                                              CHARLES E. BINDER
Dated: November 9, 2012                         United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Order was electronically filed this date, and electronically served on Frederick Schienke, Reed Schmitt, Jonathan Martin, Jack Fuchs and James Hammond.

Date:  November 9, 2012                  By     s/*Jean L. Broucek*
                                                     Case Manager to Magistrate Judge Binder